USDC- GREENBELT
'22 SEP 7 PM 3:42

# UNITED STATES DISTRICT COURT

## GREENBELT, MARYLAND

Thomas P. Johnson, III,                    *

      Plaintiff Pro Se                 *
                           *
                           *

VS.
                           *                    TDC 22CV2250

Larry Hogan, Governor                      *
for State of Maryland, Et al.              *
                           *

                           *
                           *
      Defendant                        *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF PRO SE COMPLAINT FOR
### PLIMINARY INJUNCTION-TRO-FRCP 65 et seq.
### FILED SIMULTANOUSLY WITH THE MOTION

**NOW INTO COURT** comes Thomas P. Johnson, III, Plaintiff Pro Se.

Herein after, Plaintiff.

### JURISDICTION AND VENUE

This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 et

seq., because these claims "are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the U.S.

Constitution".

1

**INTRODUCTION**

**TIME IS OF THE ESSENCE-PROSPECTIVE RESTRAINING ORDER-TRO**

1. Time is of essence in this proceeding and Plaintiff Pro Se (hereafter Plaintiff)

   requests that the Court to act on this matter expeditiously. Plaintiff has in fact

   experienced irreparable injury. Defendants have 'limited' Plaintiff's access to the

   ballot.  Any remedy at law would be illusionary.  Notice has been provided to

   Defendants by service a summons on Maryland's Secretary of State.  The filing

   deadline for Plaintiff to file his 'write-in candidacy for Circuit Court Judge of

   Montgomery County, Md. is October 20, 2022.' Time is needed to prepare Plaintiff's

   campaign to run for political office. Plaintiff must have his application completed at

   an earlier date to have his name placed on the sample ballot. An unsuccessful

   application attempt was made by Plaintiff on or about August 15, 2022 with

   Maryland State Board of Elections to file an application, to run as a write-in

   candidate for Circuit Court Judge for Montgomery County, Maryland.

**Explanation given for Denying Plaintiff's Application for 'Write-In Candidacy' for circuit court judge unconstitutional.**

1. Plaintiff ran previously as a write-in candidate in 2020 Presidential Primary election,

   Plaintiff has met all of the State's criteria to qualify as a write-in candidate for public

   office, specifically, write-in candidate for Montgomery County, Maryland Circuit

   Court judge.

   Plaintiff's political party affiliation is registered with the Democratic Party.

   Plaintiff has been a licensed attorney in good standing for approximately 29 years.

   He has been a resident of Montgomery County, Maryland since the approximate

   year of 1995.

2. Plaintiff identifies himself as a Black male; holds active state bar licenses in the

   District of Columbia, Louisiana & Maryland; is admitted to the same U.S. District

   Courts; Bankruptcy Court of Greenbelt, Maryland; U.S. Fifth Circuit Court of Appeals;

   and, the Court of U.S. Veterans Court of Appeals.

3. The Circuit Court of Montgomery County, Maryland has 24 judges. In the last eight

   years, Defendant, Republican Governor Larry Hogan (hereafter, Governor) has [NOT]

   appointed one single Black male judge in his two terms in office. Montgomery

   County is the most diverse County in the state.

**Governor's appointed circuit court judges run on a partisan platform.**

4.  Sitting judges have to run for public office soon after appointed by the Governor.
    Appointed judges run as a slate, supposedly non-partisan. The slate, 4 individuals or
    group, give the appearance they are more qualified than outside candidates. They
    received financial support from the major white law firms. Those law firms appear
    before the judges.   Running as non-partisan status is a fiction and confusing to the
    voter.  In the general Presidential election of 2020, the sitting judges had signs
    placed at the Republican Party table, in near proximity of former President Trump's
    signs (Exhibit 1 in globo., campaign signs photographs attached).

5.   In the 2020 Presidential election, Republican voters overwhelming supported the
    sitting judges.  Whomever is the governor, Democratic or Republican, he/she in
    most cases appoints someone with party affiliation.

**Montgomery County, Maryland's Vetting Process is Partisan & Biased.**

6.   Maryland's Republican Governor appoints 13 people who sit on the Governor
    Judicial Commission, this at the sole discretion of the Governor. Each candidate for
    circuit court judge is evaluated on a subjective basis to determine a candidate's
    qualifications. Plaintiff contends the vetting process is partisan after having going
    through the process six times unsuccessfully. This process denies the voter the right
    to participate in the selection process for selecting judges.

7. In 2019 plaintiff learned that a candidate up for appointment for Circuit Court had a former law partner on the Governor's judiciary commission. The individual was nominated.  After obtaining this information, Plaintiff felt that his efforts of going through the vetting process was a waste of time, decided to run for public office as a candidate to challenge the Governor's slate of four sitting judges in the 2020 Presidential Primary.  This was at the height of COVID.

**Application requirement for running for circuit court judge in Montgomery County, Maryland.**

8. Plaintiff has lived in Montgomery County for approximately 23 years, and knows of only one other individual to unsuccessfully challenge a sitting circuit court judges. Running for circuit court judge in Montgomery County, Maryland, for a candidate's name to be placed on the ballot must do the following: a financial statement must be filed with the judiciary in Annapolis; and, an application & filing fee have to paid to Maryland Board of Elections. Upon completing this process, a candidate has to apply for a tax identification number with the IRS, upon receiving the tax I.D., a candidate treasurer has to open a campaign bank account to manage the finances for the candidate.

**Plaintiff ran a grassroots campaign in event he became a judge, it would demonstrate his independence on the bench.**

9. Plaintiff's campaign was grassroots and self- funded.  Plaintiff lost his primary race in 2020. Plaintiff got the idea to run as a "write-in" candidate from U.S. Senator Lisa

Muskowski of Alaska, who was defeated the first time she ran in a primary.

Subsequently, she ran as a write-in candidate for the U.S. Senate and won.

**Global Pandemic, COVID restricted limited Plaintiff's campaigning opportunities.**

10. Plaintiff could do little canvassing in 2020 due to a highly contagious world-wide

pandemic. Plaintiff used social media to get name recognition: established Gmail,

Instagram & Twitter accounts. Campaigning for county wide public office requires

energy, resources & time: money for campaign cards, flyers, posters & yard signs.

Plaintiff dedicated approximately 60 hours per week to his campaign: going to

outdoor venues when the opportunities were presented.  Plaintiff had little time to

spend with family and friends.

11. Plaintiff lost the primary of 2020 against the slate of four sitting judges appointed by

Maryland's Republican Governor. Since Plaintiff had already laid the groundwork for

candidacy recognition, subsequently, Plaintiff decided to run as a write-in candidate.

COVID had not abated.  Plaintiff lost his write-in bid to become Circuit Court judge. It

would be two years before Plaintiff could run again for office of Circuit Court Judge

for Montgomery County, Maryland.

**Plaintiff's name recognition.**

12. In 2022, Plaintiff felt that he has gained significant name recognition in Montgomery

County to challenge the Governor's slate of four appointed judges. Like previously

stated, made application to run against the Governor's new slate of judges.

Plaintiff's application was accepted. Thereafter, Plaintiff proceeded to campaign.

Plaintiff was invited and met with individuals running for County Executive and Governor. Plaintiff participated in their campaign events.

13. The 2022 Gubernatorial primary election was supposed to take place in June 2022. It was pushed back to July 19, 2022 due redistricting litigation. Voter turnout was low, approximately 20%. Plaintiff received 20,000 fewer votes than he received in the previous election (approximately 50,000) because most voters were traveling on vacation during the month of July.

**Governor's vetting process has denied well qualified Black attorneys from becoming circuit court judges.**

14. A governor's judicial appointments are selected from a vetting process. This is a subjective process and has kept well qualified African-American males off the bench in the Governor's two terms (8 years). Plaintiff knows of two other well qualified Black male candidates who went through the vetting process unsuccessfully: Judge Williams who currently sits on Montgomery County, Md. District Court.  He has been on the bench for several years. Administrative Judge Henderson who also had been an active administrative judge for many years. Like Plaintiff, none of them were given consideration.

**Board of Elections would not allow Plaintiff to make application for write-in candidate due to recent legislative changes in the law; Md. Election Law Code Ann. §5-706.**

15. Plaintiff lost his judicial bid in the July 19, 2022 Gubernatorial Primary, subsequently, Plaintiff notified the Maryland's Board of Elections on or about August 15 2022, of his intentions to run in the November 2022 Gubernatorial midterm election as a

write-in candidate. Plaintiff was informed via email that he could not run (Exhibit 2

in globo, email telling plaintiff he could not make application for write-in candidate

for circuit court judge). This was the first time Plaintiff received notice about the

changes in the law. Plaintiff ask when did the changes in the law take place?

16. Plaintiff learned the changes took place in Maryland's 2021 legislative session. See

**Md. Election Law Code Ann.§ 5-706 et. Seq.** (Exhibit 3 in globo, complete text):

**§5-706.  Candidate defeated in primary election**
**(a) Scope. –**This section does not apply to:
**(1)** a candidate selected by a political party to fill a vacancy in nomination under
Subtitle 9 or Subtitle 10 of this title; or
**(2)** a candidate defeated in a presidential preference primary.
**(b) Candidacy not allowed. –**
**(1)** Except as provided in subsection (c) of this section, the name of a candidate who
is defeated for the nomination for a public office may not appear on the ballot at
the next succeeding general election as a candidate for office.
**(2)** A candidate who is defeated for the nomination for a public office may not file a
certificate of candidacy as a write-in candidate at the next succeeding general
election as a candidate for any office.
**(c) Candidacy not allowed—Candidate for office of judge of circuit court. –** The
name of a candidate for the office of judge of the circuit court who is defeated in
the primary election in each contest for the office of circuit court judge in which
the candidate appears on the ballot at the succeeding general election as a
candidate for office.

**Md. Election Law made historical changes; never in Maryland's prior history had a**
**law been designed to prohibit a candidate from running as a write-in candidate after**
**the candidate lost in a primary election.**

17. At no time hither or before has a statute existed in Maryland's history to ban a

candidate from running as a "write-in" candidate for public office who lost in a

primary election against a governor's judicial appointments.   This statute was

designed to protect the Governor's appointed circuit court judges. Low voter turnout

during the primary was undoubtedly caused by redistricting litigation. All primary

public candidates were affected by this litigation. However, none of the candidates

running for public office are candidates that was appointed by Maryland's Governor.

**Maryland Election Law is severely harsh; two year waiting period before a defeated candidate in a primary can run again; sitting judges can be challenged once; previous law allowed for circuit court judges to be challenged twice.**

18. Plaintiff alleges inter alia, Md. Election Law Code Ann. §5-706 et seq. violates the U.S.

Constitution: (1) Favors appointed sitting judges over outside challengers; (2)

Burdensome restrictive to Plaintiff, provides a harsh requirement on those who do

not make the primary, there is a two-year waiting period before a candidate can run

again; (3) Denys the voter an alternate choice of candidates, the voter is left with only

the Governor's handpicked candidates at the ballot box; (4) Plaintiff is left with no

other ballot access; Md. Election Law gives the Governor and Legislators unfettered

discretion about who can run for office; (5) in event Plaintiff decides to go out and

campaign on his own he will most likely be met with a cease and desist order filed by

the Governor's four appointed circuit court judges running on a slate, "Vetted" judges;

the statute is draconian in nature, that it is  prior restraint on Plaintiff's free speech

and does not allow Plaintiff to associate with the voter to talk about his prospective

candidacy.

**FACTS**

19. Plaintiff brings this claim against the Governor for the State of Maryland and State

Legislators, who sponsored Md. Election Law that seriously impinges on Plaintiff's

Constitutional Rights: Prior restraint on Free Speech and Equal Protection. The

effective date of the law enactment, January 1, 2021 Regular Legislative Session,

Md. Election Law Code Ann§ 5-706 et seq.

**Montgomery County Circuit Court Judges are the only candidates running for public office Maryland's Governor appoints. No other candidate running for public office is appointed by the Governor.**

20. The law discriminates against Plaintiff and prohibits his ability to run for public office

as a write-in candidate. Md. Election Law Code Ann. §5-706 et seq., provides no

other alternative way for Plaintiff to run as a write-in candidate for circuit court

judge. Any remedy would be illusory. No other public candidate running for political

office is appointed by the Governor can be found in Md. Election Law.

**Cease & Decease order and contempt of court should Plaintiff go out on his owns start campaigning.**

21. There are civil penalties should Plaintiff go out on his own and start campaigning

without Maryland's State Board of Elections approval. More likely than not, Plaintiff

will be hit with a "Cease & Desist" order by "The Elected Sitting Judges" who in 2020

filed a claim against an opponent in the Circuit Court for Montgomery County,

Maryland, a court which the sitting judges sit on.

**ELECTED SITTING JUDGES vs. MARYLIN PIERRE; Sitting Judge slate brought a 'prior restraint order against an opponent in 2020 based on a campaign worker's public 'speech.' The suit was brought in the same circuit court where the judges sit on the bench; all judges involved in the proceeding were members of Montgomery Circuit Court.  Case No, 483878V (prohibitory injunction).**

22.  In ***Elect Sitting Judges vs. Marylin Pierre,*** Case No. 483878V in was alleged that a

"***conversation was overheard***" where one of Ms. Pierre's campaign workers

referred to her as a judge." A public copy of the four sitting judge's complaint

(Exhibit 4 in globo., sitting judge's docket entries).

**Covid was a major factor in the 2020 election. Social distancing was the norm made it difficult to have face-to-face conversations with voters.**

23.  Plaintiff was defeated by the four slated sitting judges in the primary election of

2020. Md. Election Law Code Ann. §5-706 did not exist prior to this time to prevent

Plaintiff from running against the Governor's 4 appointed sitting judges as a write-in

candidate.

**Plaintiff application for write-in candidate for circuit court judge was accepted.**

In 2020 Plaintiff campaigned during the height of COVID as a write-in candidate, his

name did [not] appear on the ballot. This made Plaintiff's efforts more difficult since

he had to make a serious effort to gain name recognition.  Plaintiff lost his bid to

become circuit court judge in the presidential election of November 2020. Plaintiff

had to wait two years until the next election cycle, Gubernatorial Primary.

24. Now in 2022 plaintiff made a third public bid to run for Circuit Court Judge for

Montgomery County, Maryland. Complying with all of the pre-campaign

requirements: filing financial statements with Maryland judiciary; filing application

for candidacy with Maryland's Board of Elections, Division of Candidacy and

Campaign Finance. The Primary was held on July 19, 2022.

**Plaintiff's campaign was aided this time by campaigning with former President Obama's Education Secretary, John King who was a candidate running for governor, assisted Plaintiff with gaining name recognition.**

25. Plaintiff made public appearances throughout Montgomery, County, campaigning,

    making voters of Montgomery County aware of his self-funded grassroots candidacy.

    Plaintiff attended public functions in various parts of the County: Bethesda's vegan

    food festival; LBGQT+ Pride Parade in Rockville; Strawberry Festival, Olney Sandy

    Spring Md.; stood on the stage with John King, President Obama's Education

    Secretary, who was running for Democratic Governor of Maryland; stood on stage

    with former Secretary King advocating women's rights on Veterans Plaza in

    Wheaten, after the Roe v. Wade decision;  walked alongside the Education Secretary

    in the Takoma Park July 4th parade.

    **The Governor's four sitting appointed circuit court judges are financially backed by the major white law firms. These firms appear before the judges. Salary of a sitting judge is approximately $170,000 plus benefits.**

26.   The Governor's four sitting appointed judges running as a slate, are backed by

    major predominately white law firms of Montgomery County, Maryland. (Exhibit 5 in

    globo., judge's financial statements).  These law firms appear before the judges.  The

    appointed judges have a campaign war chest in excess of two hundred thousand

    ($200,000) dollars, largest contributors coming from the major law firms as reflected

    on the appointed judge's public campaign financial statement filings. The salary of a

    circuit court judge is approximately $170,000.00 annually in addition to benefits.

**Md. Election Law discriminately prohibits a write-in candidate for participating in a campaign for public office.**

27. After Plaintiff lost his bid for circuit court judge in the Gubernatorial primary, on or about August 15, 2022 Plaintiff contacted Maryland Board of Elections in attempt to apply for the November, 2022 general election as a ***write-in candidate*** for Circuit Court Judge for Montgomery County, Maryland. Plaintiff was told he could not run due to recently passed legislation, Md. Election Law Code Ann.§5-706(c)(2) et seq., **Candidacy not allowed—Candidate for office of judge of circuit court**: "A candidate who is defeated for the nomination for a public office may not file a certificate of candidacy as a write-in candidate at the next succeeding general election as a candidate for any office."

**Md. Election Law is in violation of the U.S. Constitution.**

28. Plaintiff argues Md. Election Law is prohibitive, harsh, draconian & harmful to any write-in candidate who decides to challenge a circuit court judge after losing. Further contends Maryland's Election Law is prior restraint on free speech and assembly, shows favoritism to one class of candidates (sitting judges) over another (write-in candidates).

29. Plaintiff does not get the same equal protection and treatment as sitting judges. Plaintiff attempts to run as a write-in candidate in November 2022 Gubernatorial midterm election has been stymied by Maryland's Election Law. When reading the statute in its entirety it is convoluted and confusing. An ordinary person would have difficulty in interpreting its meaning. Full text of statute hereon, Supra., ¶ 18.

**Plaintiff argues that any argument Maryland's Governor or Legislators give for the discriminatory Law is pretextual.**

30. Plaintiff contends Maryland's Election Law statute is unconstitutional, *'disparate treatment,"* it favors sitting judges and protects them from challengers like Plaintiff, a write-in candidate for public office. Any argument that Defendant gives will be invalid.  See McDonnell Douglass Corporation v. Green, 411 U.S. 782 (1973)(plaintiff contends disparate treatment); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1987), Defendant must show why the disparate treatment does not discriminate against write-in candidates.

**Unrefuted bias of Md. Election Law.**

31.  No other candidate running for public office is appointed by the Governor. The statute protects the Governor's appointed judges. Md. Election Law does in fact favor appointed judges. An opponent who is defeated in a primary election cannot run in a Gubernatorial or Presidential election. CONST. amend XIV §2 violation, 'Equal Protection Clause.'

<u>**STANDING**</u>

**MD. ELECTION LAW has in fact caused direct irreparable harm to Plaintiff.**

32. Standing is a threshold matter required for a claim to be considered by federal courts. Plaintiff in this proceeding is the party that is being harmed by Governor's and State Legislator's actions. See Via Mat Int'l S. Am. Ltd. v. United States, 446 F3d 1258, 1262 (11th Cir. 2006.

**Imminent Urgency for Injunctive Relief.**

33.  There is an imminent urgency, a time factor involved in this matter. The deadline for

filing for write-in candidacy is October 20, 2022.  For Plaintiff's name to be placed on

the sample ballot, Plaintiff must file for write in candidacy at an earlier date.

34.   Plaintiff is placed at an unfair disadvantage by the implementation of the Md.

Election Law Code Ann. § 5-706. The statute favors Defendant's appointed judges,

this shows bias, favoritism and disparate treatment, over a bonified challenger. Md.

Election law violates the U.S. CONST. XIV, §1: "…Due Process and Equal Protection

clause…" There is no other way for Plaintiff to pursue relief unless coming to the

court.  Maryland's harsh Election law prohibits a write-in candidate name from being

placed on the ballot or sample ballot. Montgomery County, Maryland voters need to

be informed about all candidates running for public office. Leaving Plaintiff's name

off the ballot, means the voter is less informed and voting for a candidate is purely

guess work.

## SUIT AGAINST STATE OFFICIALS

**Suit is brought against state officials for U.S. Constitutional violations is not the state.**

35. Plaintiff alleges the relief for prospective injunctive relief (TRO) is against the

Governor and State Legislators, not the State of Maryland. Defendants are being

sued in their official capacities. Well established law a sovereign state cannot be

sued unless it waives the right or it is abrogated by Congress.  See Fla. Democratic

Party v. Scott, 215 F. Supp. 3d 1250 (N.D. Fla. 2016) cited Kimel v. Fla. Bd. of Regents,

528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), "alleging constitutional violations

against a state official in their official capacity for prospective injunctive relief is not

as suit against the state and does not violate the 11ᵗʰ Amendment.".

Therefore the U.S. CONST. amend XI does not apply. See *Ex Parte Young* 209 U.S.

123, 161, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**Plaintiff is alleging 1ˢᵗ Amendment violations against Maryland's Governor & State Legislators; prior restraint on 'free speech.'**

### U.S. CONST. amend. I

36. Plaintiff contends that Md. Election Law Code Ann.§ 5-706 has in fact caused him

    harm, by not being allowed to canvass for votes, to associate and peacefully

    assemble with members of the voting community, violation of his First Amendment

    freedoms; prior restraint. Plaintiff is prohibited from engaging in business activity:

    contracting with print shops who make Plaintiff's campaign cards, flyers & yard

    signs. Not only are Defendants' restrictive law harmful to Plaintiff, but also harmful

    to the local business community.

37. Plaintiff will be prohibited from opening up a bank account through his treasurer to

    do banking, a hinderance on his prospective campaign. Maryland's Election Law sole

    purpose is to protect the Governor's appointed sitting judges. What this clearly

    shows is Defendant's judges will run unopposed and will not have to campaign for

    their jobs. The voter is being cheated.

## PROHIBITORY INJUNCTIVE RELIEF REQUESTED
## LAW & ANALYSIS

**Prohibitory injunctive relief is found in equity balancing the hardships.**

38.  Purpose for prohibitory perspective injunction relief is to preserve the status quo.

The 2020 election cycle, Plaintiff was allowed to run for circuit judge as a 'write in

candidate (Exhibit 6 in globo., Plaintiff's application). To allow Plaintiff to run for

public office (write-in candidate) like he did in the previous years; have his name

placed on the ballot with the designation, 'WRITE IN CANDIDATE.' See University of

Tex. Camenisch, 451 U.S. 390, 395 (1981). Injunctions are found in equity, federal

law or state statutes. Federal district courts issue injunctions pursuant to the

traditional principles of equity found in the "English Court of Chancery, 1789."

**The standards federal courts use to evaluate state statutes that are deemed
unconstitutional.**

39.  Courts do not use tunnel vision when evaluating statutes, they review statutes in

their entirety.  See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510

U.S. 86, 94, 114 S.Ct. 517m 126 L.Ed2d 524 (1993).

40. Courts give deference to all statutes and ordinances, presuming they are

constitutional at first glance. See Taylor Commons v. Taylor, 249 Mich App. 619, 625;

644 NW 2d. 773 (2002); courts have a duty to evaluate a statute as constitutional

unless unconstitutionality is clearly apparent.

41. Plaintiff makes the argument Md. Election Law on its face favors Maryland's

Governor appointed circuit judges over opposing write-in candidates. Md. Election

law is specifically states in part: "...a candidate who loses in the primary, **_candidate_**

***for circuit court judge may not be allowed to run in the primary.***" Maryland

Governor appoints no other candidates to run for public office.

**Md. Election Law Code Ann. §5-706 restrains a write-in candidate's ability to challenge a sitting judge.**

42.   In the case before the Court Plaintiff contends Md. Election Law is unconstitutional

when its sole function overwhelmingly favors one group of political candidates, the

Governor's appointed judges, over a challenger write-in candidate for circuit court

judge.  Md. Election Law gives the Governor an unfettered harmful tool to exercise

undue influence over the Circuit Courts of Montgomery County, Maryland.

43.   The Governor's judges do not have to campaign and will run uncontested after an

opposition candidate has lost in the primary election. In hindsight this was

foreseeable prior to the implementation of the state statute, it would in fact protect

a group of circuit court judges (SLATE OF 4 VETTED JUDGES running for Circuit Court

Judge for Montgomery County, Md., 2022), keep an outside opponent like Plaintiff

from challenging the sitting judges.

**Md. Election Law is in clear violation of the 'Equal Protection Clause' 14th Amendment to the U.S. Constitution.**

44.   The implementation of the Md. Election Law amounts to disparate treatment, a

violation of the Equal Protection Clause violation, U.S. CONST. amend XIV §2

violation. See Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). The

court said: "there is a right to associate for a person to associate to advance their

political beliefs, and the right of voters…regardless of their political beliefs to cast

their votes without interference of the Governor or Legislators." Md. Election Law

stymies the voter from choosing between candidates in a public election.

**Md Election Law does not place restrictive barriers on sitting judges.  The law in essence allows a sitting judge to run unchallenged after a primary election. A write-in candidate has to wait two years before they can challenge a sitting judge.**

45. Id. Williams 393 U.S. at 31, 89 S.Ct. at 10, Justice Black opined that a statute must be

evaluated under strict scrutiny when a state's statute establishes a harsh ballot

access to minority political candidates (write-in candidates), a candidate who

receives less votes in a previous election...and... there is a required waiting period...

to delay a candidacy... and the candidate has to petition to be placed on the ballot in

the next election is a harsh ballot requirement. With those restrictions a candidate is

virtually restricted from campaigning. Md. Election law does not speak to the

waiting period, two years a candidate has to wait before a candidate can run again.

**Instances where First Amendment Constitutional challenges are scrutinized on a lessor basis than strict scrutiny basis. Only in cases where statutes are designed to protect the voter and the preservation of the electoral process.**

46. There is nothing about Md. Election Law to suggests that the statute was designed

for the preservation of the electoral process and to protect the voter. It does the

opposite. In years prior to 2018 Defendant's four appointed judges ran unopposed.

In the approximate year 2019 there was one challenger; in 2020 there were two

challengers; same for the year 2022. In event Md. Election Law is left unchallenged,

the Governor's appointed sitting judges will have no outside challengers.  Plaintiff

makes the argument that by allowing the Governor to appoint circuit judges to go

unchallenged, it compromises the integrity of the voting process, the voter is taken

out of the voting process, it is the governor who is doing the voting and not the

voter. See Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). The

court said: "right to appear on a ballot is constitutionally protected." Unless a

candidate is deemed a less than serious challenger, this right could be abrogated.

This is not the case in this instance. The Governor does not want challengers to his

political appointments to the circuit court.

**Michigan appeal court set out three standards for challenging a state statute when deemed constitutional vague.**

47. In Dep't of State v. Michigan Education Ass'n - -NEA, 251 Mich App 110, 116; 650

NW.2d 120 (2002), the court set out three standards to challenge a statute that is

constitutional vague:

1) The statute is "overbroad and impinges on First Amendment freedoms;

2) The statute does not provide fair notice of the conduct it regulates or

3) It provides a government official with unrestricted and unlimited discretion in

determining whether a statute has been violated.

**Md. Election Law Limits Plaintiff's access to the ballot. The law is Burdensome, Overbroad and Impinges on Plaintiff's First Amendment Freedoms.**

48. Md. Election Law does in fact impinge upon Plaintiff's First Amendment Freedoms:

freedom to campaign for public office. The Governor uses Md. Election Law as a

harsh tool to silence the voices of write-in candidate challengers to his circuit court

appointments, by denying Plaintiff access to the ballot. The trier of fact need only to

review a statute on the basis that the language is only reasonable and precise. The

intent or preciseness of Maryland's Election Law is to prevent a write-in public

candidate who lost a bid in a primary from challenging Defendant's appointed

judges. Plaintiff feels the Court can make this determination from the facts outlined

in this complaint. The U.S. Constitution does place limits on state officials when it

comes to protecting and upholding rights of individuals. Supra., Dep't of State, at

120.

**Md. Election Law is 'void for vagueness and violates the First Amendment. It gives state government officials unfettered discretion on how the law is to be implemented.**

49. Maryland Governor, Legislators with the instruction to the Board of Elections are the

   only ones who have a say in who can compete against the Governor's four

   appointed judges. See Suttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935,

   935, 22 L.Ed. 162 (19690; Hynes v. Mayor and Council of Oradell, 425 U.S. 610, 96

   S.Ct. 1755, 48 L.Ed. 243 (1976), Plaintiff supports his argument by contending Md.

   Election Law makes the enjoyment of First Amendment rights dependent upon the

   sole discretion of government officials, this makes it void for vagueness.  Plaintiff is

   dependent on Maryland's Governor and Legislators to enjoy indelible Constitutional

   Rights to his detriment. Previously cited in Dep't of State,

   Supra.

**Fair and Reasonable Notice.**

50. Plaintiff did not receive notice as to the existence of Md. Election Law until he

   attempted to make application for his write-in candidacy on or about August 15,

   2022. Defendants had a duty to send out notices to all political candidates who ran

   for public office in the previous election cycle.  Defendants failed to provide this

   notice.

**Courts do not review state statutes in the abstract when they are challenged on an unconstitutional basis.**

51. Courts do not deal with constitutional issues in the abstract. See General Motors

Corp v. Attorney General, 294 Mich 558, 568; 293 NW 751 (194). A court's review of

an ordinance is paramount when the ordinance is clearly unconstitutional. Plymouth

Twp v. Hancock, 236 Mich App 197, 1999; 600 NW2d. 380 (1999).  The burden is

placed on the movant to demonstrate to the court that a statute is unconstitutional.

Plaintiff alleges Maryland's Election Law clearly violates his First Amendment Rights,

free speech, prohibiting him from peacefully assembling, campaigning and

canvassing prospective voters (prior restraint); the statute clearly shows favoritism

and protects Defendant's appointed judges from outside write-in challengers,

disparate treatment a violation Plaintiff's Fourteenth Amendment rights.

52.  Maryland's Governor & State Legislators have crafted a scheme of 'Back Door Voter

Suppression.' Here the Governor and Legislator are in control of public vote.

Choosing political candidates for the voter: "No right is more precious in a free

country than that of having a voice in the election of those who make the law under

which, as good citizens we must live...This "sacrosanct" right is imbued on

"prospective aspiring eligible voters and current voters." See Buridick v. Takushi, 504

U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)(quoting Illinois Bd. of Elections

v. Socialist Workers Party, 440 U.S. 173, 184, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)).

State laws that unconstitutionally burdens a voter's right are impermissible, the

same applies to Plaintiff's 'free speech right.'

**Plaintiff's prospective injunctive relief is sought with emphasis: Plaintiff's affidavit, petition & motion.**

**(1)** Asking the Court to implement prospective injunctive relief to allow Plaintiff to make application for write-in candidate for Circuit Court Judge for Montgomery County, Maryland for the November 2022 Gubernatorial Mid-term election as soon as possible.

**(2)** Place Plaintiff's name on the ballot with designation: WRITE-IN CANDIDATE.

53. "Plaintiff in this proceeding seeks prospective injunctive relief. Pursuant to Federal Rule of Civil Procedure (FRCP), §65(b)(1)(A), a court may issue a temporary restraining order only if specific facts in an affidavit or a verified complaint clearly show immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard. In this instance, movant is prohibited for making application as a write-in candidate for Montgomery County, Maryland's Circuit Court  judge.

54. Requests for injunctive relief, a plaintiff must satisfy equitable factors: (1) "irreparable injury, (2) no adequate remedy at law (illusory), (3) a likelihood of success on the merits, (4) the balance of hardships, and (5) the effect on the public interest. See Alliance for the Wild Rockies v. Cot-Trabajadores v. Fortuno, 669 F.3d 772, 779 (1st Cir.2012)(preliminary injunction).

**Plaintiff has satisfied the standards for the implementation of prospective injunctive relief. No other candidate running for public office is appointed by the Governor, only circuit court judges. Plaintiff argues there is a strong likelihood for success.**

55. Plaintiff has outlined the specific first-hand facts herein above to demonstrate the

    ***substantial likelihood for success***: (1), Maryland's State Election law keeps Plaintiff

    from running against Defendant's appointed judges as a "write-in candidate for

    public office", specifically, State Circuit Court Judge for Montgomery County,

    Maryland. Governor and State Legislators enacted a law (Md. Election Law Code

    Ann.§ 5-706 et seq.) that prohibits Plaintiff from campaigning against Defendant's

    appointed judges. Md. Election Law specifically targets Plaintiff; Md. Election Law is

    clearly biased on its intent and purpose, it discriminates.  Md. Election Law does in

    fact trample on Plaintiff's First and Fourteenth Amendments U.S. Constitutional

    rights.

56.  Plaintiff argues the prospect for success for injunctive relief is based upon Md.

    Election Law Constitutional violations, it has caused and is still causing irreparable

    harm to Plaintiff. Injury to Plaintiff has occurred and is occurring in the present

    moment; Plaintiff is prohibited from making application to run for public office. See

    Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017). Plaintiff's likelihood of

    success is based on the fact he was given the opportunity to run as a write-in

    candidate in a prior election cycle, 2020 primary, followed by the 2020 Presidential

election. Defendants cannot provide any legitimate reason for the sudden change in

the law, other than to protect the Governor's appointed circuit court judges.

**Imminent Reoccurring Irreparable Injury**

57. (2):  The deadline is fast approaching for Plaintiff's write-in candidacy application for

circuit court judge, October 20, 2022. Unlike before in the prior 2020 Presidential

election cycle, Plaintiff has been denied this opportunity, to file his application for a

'write-in candidate' for Circuit Court Judge for Montgomery County, Maryland in the

2022 Gubernatorial election. Plaintiff's application would have been completed and

finalized had he not been denied this right by the recent Md. Election Law, afforded

to Plaintiff in the previous election cycle.

**Plaintiff requests for injunctive relief is not based on mere conjecture or speculation. Any remedy afforded to Plaintiff is illusory.**

58.  See Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 417, (4th

Cir.1999)(preliminary injunction).  Plaintiff in this proceeding has shown that he has

in fact suffered irreparable injury, cannot make application to run for public office.

Plaintiff makes no conjecture or speculation about the events they have occurred

and continuously reoccurring. No suitable remedy exists that allows Plaintiff to run

for public office as a write-in candidate. See Grand River. Six Ntions, Ltd. v. Pryor,

481 F.3d 60, 66 (2d Cir.2007). Plaintiff argues that he has satisfied the injunctive

relief criteria.  In the year 2020 Plaintiff was given this opportunity.  At no other time

in Maryland State's history has an opponent of a sitting judge been denied the

opportunity to run as a write-in candidate against appointed sitting judges by a

governor.

59. **Irreparable Injury Elements:**  injury to Plaintiff cannot be prevented or fully rectified by a final judgement; redress cannot be rectified with money damages; damages are illusory. Plaintiff is not seeking monetary compensation and Plaintiff cannot be made whole with money; no way to accurately measure damages.

    **Md. Election Law by its implication does in fact prohibit a write-in candidate from participating in the election process once they lose in a primary election; Md Election Law gives elected state officials unbridled discretion to prohibit Plaintiff from running as a write-in candidate for circuit court judge.**

60. See New York v. U.S. Department of Homeland Sec., 969 F.3d 42, 86 (2d. Cir. 2020)(money award cannot satisfy the injury). Defendant has denied Plaintiff the opportunity to associate and speak to the public about his campaign, prior restraint of free speech.  There is no adequate remedy at law for suppressing free speech. See U.S. CONST. amend I. Loss of right to free speech; prior restraint on free speech. See Elrod v. Burns, 427 U.S. 347, 373 (1976). In Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S. Ct. 935, 22 L.Ed.2d 162 (1969); Id at 148, 149, the court said a state statute is unconstitutional when it subjects "First Amendment Freedoms to prior restraint to free speech; and when public officials have absolute power to enforce the statute.

**Plaintiff's threatened injury outweighs the harm the relief would inflict on Defendant**

61.  Repeatedly, Md. Election Law Code Ann § 5-706 was crafted to protect the Governor's appointed judges from outside challengers. Nothing more can be construed from the vagueness of the statute. It was designed so that sitting appointed judges by the Governor could run unopposed for public office.

**No adequate remedy at Law by the implementation of Md. Election Law.**

62. Like in Plaintiff's situation, when a party is prevented from participating in a public election by a state official, the Governor and Legislators, they must offer up an alternative remedy, in this instance, the remedy must be immediate. Plaintiff availed himself to the remedy in a prior year, now Defendants have taken it away by enacting Md. Election Law that protects Defendant's sitting judges (P. Ex. #6 in globo, application for write-in candidate, 2020). See Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1376 (7th Cir. 1992). The legal remedy is illusory. See Wilson v. Illinois S. Ry., 263 U.S. 574, 576-77 (1924); Winston v. General Drivers, Warehousemen & Helpers Local Un., 879 F.Supp. 719, 725 (W.D.Ky. 1995).

**The burden and hardship are weighs heavily on Plaintiff and not the Governor and his appointed sitting judges.**

63. **Balancing of the Hardships.** Plaintiff argues that the injury he faces outweighs the injury that would be sustained by Defendants as a result of injunctive relief. Defendant has appointed individuals who are currently judges. Previously, as in the last campaign cycle, Presidential Primary 2020, Maryland's Election Law did not exist, Plaintiff was allowed to challenge the sitting judges as a write-in candidate after a primary defeat.

64. In balancing, the hardship is greater on Plaintiff. These four appointed judges already have a seat on Montgomery Circuit Court. Plaintiff is challenging them for a seat.  Political contributions for Defendant's sitting judges for 2022 was in excess of approximately two hundred thousand ($200,000.00) dollars. Most of it coming from the majority white law firms of Montgomery County, Md. See Defendant's appointed judge's financial statement attached. Supra.

65. Plaintiff's political campaign was grassroots self-funded. Plaintiff has not taken or received campaign money from anyone. He has been using his personal funds. Plaintiff contends that he is the one carrying the heavy load, 150 lb. bag of rocks up a hill.

**There is a 'compelling public' interest in this proceeding. By allowing Plaintiff to run as a write-in candidate, the voter will have alternative candidates to choose from other than the Governor's four appointed slate of circuit court judges; it protects the integrity of the voting process.**

66. The injunction would not adversely affect Defendant.  It assists with giving the voter options. In this instance for better words, the voters are trapped with no choice of candidates to pick from; they only can vote for candidates selected by the Governor. The slate of four circuit judges running have a fixed political party affiliation, the Governor's Party, Republican. Judges' campaign sign: "Vote for The Vetted Judges." Governor's appointed judges come from one source, the Governor. This is like a horse race that has been undermined by a fix; the Governor and the Legislators already know ahead of time the outcome of the campaign; in this instance, the voting community has been cheated.

**American Democratic system was designed to allow for political challengers.**

67. To allow Md. Election Law Code Ann. §5-706 to be used to protect a class of political candidates, the Governor's appointed circuit court judges over a write-in challenger, undermines America's Democratic system, that being the voter, this contravenes the CONST. amend 15.

**Disparate Treatment, Equal Protection.**

68. A public write-in candidate for circuit court judge must be afforded the same opportunity to challenge the Governor's appointed sitting judges. Bestowing this opportunity only on the Governor's appointed judges destroys the integrity of the voting process and cheats the voter out having an alternative to candidates to select from. Moreover, Plaintiff must be afforded these same rights.

**Md. Election Law infringes on the rights of the voter, violation of 15th Amendment to the U.S. Constitution.**

69. For the preservation of Montgomery County Maryland's judicial system, as a write-in candidate, Plaintiff must be giving the opportunity to challenge Defendant's court appointed judges. To deny this right, is to deny the voter the right to having options, to choose a candidate of their liking. See U.S. CONST. amend. XV: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude. " See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670, 86 S.Ct1079, 16 zl.ed.2d 169 (1966).

**Maryland's Governor has not appointed a Black male judge to Montgomery Circuit Court in his two terms in office.**

70.    Diversity on the circuit court matters and is one of the reasons Plaintiff is relentlessly fighting this battle to become a Circuit Court judge for Montgomery County.  Montgomery County has 24 circuit court judges, there are no Black male judges. The Governor has not appointed one in his two terms in office.

 Defendant in his two terms as Governor has appointed 32 Circuit Court Judges; not a single Black male judge was ever appointed. Statistically, Defendant's percentage for appointing Black male judges is zero. Montgomery County is the most diverse in the State of Maryland.

71. Once a judge is appointed, the term is for 15 years. Montgomery County,

    Maryland's public has been less informed about the makeup of Montgomery

    County's Circuit Court, and has been denied the opportunity to vote for a particular

    judicial candidate. It is the Governor, not the voter, who decides who becomes

    judge. See Schinder v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Voter

    awareness is paramount in an election.  By running for judicial office, Plaintiff brings

    an awareness to all judicial candidates. Running for public office is a sport. The game

    is played by winners & challengers. In this instance Plaintiff has a legal right to

    challenge. Defendants, by enacting Md. Election Law Code Ann. § 5-706 have

    destroyed a legal right for a challenger to participate in the election process (write-in

    candidate).  It is not the Governor's or the legislators' job to eliminate challengers,

    this legal right belongs to the voter.

**Plaintiff's basis for prospective injunctive relief is predicated on the following four
elements where not a single one is controlling.**

72. Accordingly, none of the four elements alone is controlling for granting a

    prospective restraining order, a court must consider the strength of each element

    together. A strong showing for the likelihood of success on the merits will

    compensate for other weak elements: "public interest." See Fla Med. Ass'n, Inc. v.

    U.S. Dep't of Health, Educ., & Welfare, 601 F.2d 199, 203 n.2 (5th Cir. 1979).

73. Plaintiff has lost precious time for filing to run as a write-in candidate, Md. Election

    Law denies Plaintiff a Constitutional right to file an application for a write-in

    candidacy, has caused Plaintiff immediate irreparable injury, reoccurring daily:

preventing Plaintiff from campaigning and canvassing for votes throughout the County; much time is needed to prepare a campaign for public office, strategizing and pursuing volunteers to assist with a campaign. Many of Plaintiff's constituents have made inquiries, encouraging Plaintiff to run again as a write-in candidate.

74. Montgomery County is the largest county in the State. Plaintiff personally traversed the entire County during the primary election canvassing voters. Moreover, Plaintiff's voice has been stifled, denied a right to speak at public forums and to associate with the public about his candidacy. In essence, this is speech suppression, a violation of Plaintiff's U.S. CONST. amend I (…"abridging the freedom of speech"…) as construed through the U.S. CONST. amend XIV §2…"No State shall ***make*** or enforce any law which shall abridge the privileges or immunities of citizens of the United States…" Plaintiff argues that Md. Election Law does in fact violate this provision of the U.S. CONST.

75. When challenging state election laws, a court must "weigh the character and magnitude of the asserted injury to the rights protected by the U.S. CONST amend 1 and U.S. CONST. amend XVI, that a plaintiff seeks to vindicate."  Maryland's Election Law is designed to protect Defendant's appointed judges. This serves no public interests.

76. Md. Election Law is out of balance and overwhelmingly favors the Defendants.

   In this instance, Md. Election Law's only purpose is to protect circuit court judges

   from outside challengers.  Clearly, the standard for review is strict scrutiny.

   Disparate treatment of outside political candidates who challenge the Governor's

   sitting judges. Maryland's Governor would like to cement his judicial legacy by

   protecting judges that he appoints.  See Anderson v. Celebrezze, 460 U.S. 780, 789,

   103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

**Md. Election Law Code Ann. § 5-706 violates the 1st Amendment to the U.S. Constitution: Prior restraint on free speech; prevents freedom to assemble and associate.**

77. The statute was designed to suppress Plaintiff's voice, prevent challenges to the

   Governor's appointed circuit court judges. Plaintiff's injury is happening now, prior

   to and at the time the brief is being filed and prepared, preventing Plaintiff from

   making application to run for public office to challenge the sitting judges appointed

   by the Governor.

78. **Prior restraint on free speech violates the U.S. Constitution**.

Md. Election Law denies Plaintiff the opportunity to:

a) Apply for write-in candidacy which takes time to prepare.
b) Social media has to be upgraded and redesigned.
c) Personal funds have to be contributed to his campaign account.
d) Plaintiff has been denied the opportunity to participate in public debates and assemble audiences to talk about his campaign. Montgomery County is the largest county in the state. Plaintiff has to drive across the County to connect with voters.
e) Plaintiff needs to redesign yard signs, posters & flyers.
f) Plaintiff needs to solicit for volunteers.

79. Courts are flexible when accommodating state election regulations while also protecting a plaintiff's Constitutional rights. The law goes against Defendants in this instance. Md. Election Law was designed to prevent challengers, write-in opponents like Plaintiff.  See. Obama for Am. v. Husted, 697 F.3d *423, 429 (6th Cir. 2012)*.

**Vagueness Application.**

80. Courts are more tolerant of laws that impinge on the Constitution…"as well as the importance of fair notice and fair enforcement…however, courts look to the nature of its enactment." The enactment of Md. Election Law is to protect the appointed judges of an outgoing Governor whose term is up. It is without question Md. Election Law would cement the Governor's judicial legacy, by making sure that his appointed circuit court judges are protected from write-in challengers. See Village of Hoffman Estates, Inc, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

**Courts give common sense reading to statutes.**

81.  A common sense reading of Md. Election Law Code Ann. §5-706 is woefully

confusing: the statute treats other public officials who are not appointed by the

governor more favorably than those who are appointed by the governor, circuit

court judges.  This is a bias over candidates not appointed by the Governor and

disparate treatment.

82. When a state's election law severely restricts a person's ability to run for public

office, the regulation must be "narrowly drawn to advance a compelling state's

importance." The design of the statute in this instance is to protect the Governor's

judicial appointments from outside challengers. See *Nroman v. Reed, 502 U.S. 279,*

*289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992).*  Plaintiff contends it is the State's

Governor and Legislators who wish to suppress his voice, to pad lock the door, not

giving him the key to challenge his appointed judges, a U.S. CONST. amend I

violation.

**There is no justification for the implementation of Md. Election Law.**

83. Plaintiff argues that there is no justification or a legitimate state interest to prohibit

a write-in candidate who lost in the gubernatorial primary election to run as a write-

in candidate to challenge Defendant's four appointed circuit court judges. No matter

how slight the burden, it must be justified. The restriction on Plaintiff's right to run

for public office is heavy handed, handcuffing Plaintiff so he cannot make application

to run against the Governor's appointed judges. Maryland's Election law does in fact protect Defendant's appointed judges. See Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); Common Cause/Georgia v. Billups, 554 F3d 1340, 1352 (11th Cir. 2009).

**Plaintiff provides the Court insight for the request for prospective injunctive relief:**

84. Using a prospective injunction filed in a voting rights case as an example will provide insight into Plaintiff's demand for an injunction pursuant to FRCP 65 et seq. See Fla. Democratic Party v. Scott, 215 F. Supp.3d 1250 (N.D. Fla. 2016). The court addressed the issue: whether extending the voting registration deadline in a Florida election due to Hurricane Matthew was proper to protect the voter. A state statute prohibited the extension.  The court stated:  Floridians would have been denied the opportunity to vote.

85. The court's opening volley: "No right is more precious in a free country than that of having a voice in elections of those who make the law under which, as good citizens we must live." Other rights, even the most basic, are illusory if the right to vote is undermined. Id. at 215; See Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

86. Plaintiff contends the right to campaign as a write-in candidate is the same. Any remedy offered by Defendant is illusory, not concrete and there is no monetary remedy available that Plaintiff can use to redress this wrong.

In Scott, Supra, the Court went through the analysis Plaintiff is using for the request for prospective injunctive relief:

1) There is no sovereign immunity when suing state officials. A state Official is subject to suit in their official capacity, does not violate the Eleventh Amendment, Ex Parte Young 209 U.S. 123, 161, 28 S.Ct. 441, 52. L.Ed. 714 (1908). Here Plaintiff seeks injunctive relief against Maryland's State Governor and Legislators.

2) FRCP 65(b)(1)(A) "a court may issue a temporary restraining order only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard. This rule is honored scrupulously by the courts; The TRO is a tool used to maintain the status quo rather than granting all of the relief requested by a plaintiff.

3) Plaintiff has outlined Defendants' violations of his constitutional rights: (i) there will be a substantial likelihood of success on the merits. Here, Plaintiff contends that Md. Election Law Code Ann §5-706 does in fact trample on his U.S. Constitutional Rights, Free Speech, Freedom to Associate, Equal Rights Protection, & Privileges or Immunities.

4)   A write-in challenger must be afforded the same rights as the Governor's

appointed circuit court judges running for public office. Md. Election Law cannot

undermine this constitutional right, the right to be placed on ballot.

**Historical analysis of state statutes deemed unconstitutional based on disparate treatment, violating the CONST. amend XIV §2.**

87. History has demonstrated States used laws in the past to maintain segregated

schools. In event Md. Election Law is applied in this instance, it will assist the

Governor and State Legislators with maintaining a racially gender based segregated

circuit court. See Brown v. Board of Education 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed.

873 (1954). When a Governor and State Legislators act in concert to craft laws to

discriminate on the basis of race and gender, a court is to scrutinize the actions

closely.

**There is a societal responsible need for Black male judges on Montgomery County, Maryland's circuit court.**

88. Emphatically, Plaintiff argues there is a need for Black male judges on Montgomery

County Maryland's Circuit Court. This image is not only bad for the people of the

County, it is bad for America. During the 1964 Civil Rights era, America lived through

a torrent period where southern states took pride in laws similar to Maryland's

Election Law, to maintain a segregated society. Civil Rights and Voting Rights Acts

transformed the lives not just for Black citizens, but of every American. See NICK

KOTZ, Judgment Days, Lydon Banes Johnson, Martin Luther King Jr., and The Laws

That Changed America, pp. 357, 421; pp. 244, 246, 250.

**Black men under duress in Montgomery County's prison population.**

Despite the fact that Black men only making up approximately 10% of Montgomery,

Maryland's population (census.gov), they makeup 60% of the prison population

(countyoffice.org). Codifying laws which make it more difficult to challenge incumbents

and appointees to a position which already disproportionately harms Black men is

nothing short of institutionalized racism.

**Md. Election Law leaves Plaintiff no way out of the 'Abyss.'**

89. Defendants did not leave any provision in the Md. Election Law where Plaintiff could

pursue redress. There is no monetary remedy that will make plaintiff whole.  The law

discriminates against a candidate running for public office, who lost a bid in the

primary election, and, now wants to run as a write-in candidate. Plaintiff was

allowed to run in 2020; now in 2022 Plaintiff is prohibited. The law was designed to

protect the Governor's appointed judges and to keep outsiders from challenging the

Governor's appointed judges.

**PRAYER FOR RELIEF**

90. For these hereabove reasons Plaintiff asked the Court to implement an immediate

prospective preventative injunction to stop the continuous harm done to Plaintiff by

Md. Election Law Code Ann. 5-706.  Prohibiting the implementation of Md. Election

Law immediately, as necessary to maintain the status quo. FRCP 65(b)(2). The

Election Law violates the U.S. Constitution. This is pursuant to FRCP 65(d)(1)(C).

There is no uncertainty about the relief Plaintiff asked for, Defendants should be

made to comply with the old law. See Littell v. Houston ISD, 894 F3d. 616, 631 (5th Cir.2018).

91. Allow for Plaintiff to apply for candidacy to run for circuit court judge as a write-in candidate and have Plaintiff's name placed on the ballot with designation, 'WRITE-IN CANDIDATE' for Circuit Court Judge for the current 2022 general election.

**HEARING REQUESTED**

92. Plaintiff request a hearing at the earliest date & time that is practicable. See FRCP 65(b)(3). A summons was served on Defendant at the time of filing of the motion & pleading

**BOND**

**Suit brought based on public-interest-litigation.  Protect the voting process & voter.**

93. Plaintiff argues that there should be no bond posting or a nominal amount at best to be fixed by the Court. Plaintiff argues this is "Public Interest Litigation" based on the facts herein alleged. Plaintiff is attempting to prevent Maryland State Governor and Legislators from implementing a law to protect a class of politicians, appointed sitting judges, who do not have to campaign for public office to maintain their seats against write-in candidates who lost doing a primary election who want to continue to challenge the Governor's appointed judges as a write-in candidate in a general election. See Moltan Co. v. Eagle -Pitcher Indus., 55 F.3d 1176 (6th Cir. 1995); Pharmaceutical Soc'y v. New York State Dept. of Soc. Serv., 50 F.3d 1168, 1174-75 (2d Cir. 1995).

94. Order Defendants to allow Plaintiff immediately to move forward with the

application for write-in candidate; to have Plaintiff's name placed on the sample

ballot and Gubernatorial ballot with a designation of 'WRITE-IN CANDIDATE" for

circuit court judged for Montgomery County, Md., prior to the November 2022

Gubernatorial mid-term election. Plaintiff has described to the Court there is a need

for a prospective preliminary injunction immediately against Maryland's elected

officials, the Governor and State Legislation, that will afford Plaintiff the opportunity

to run as a write-in candidate for circuit court judge of Montgomery County, Md.

The actions of the Governor and the Legislator must be restrained. See Scott v.

Schedler, 826 F.3d 207, 211-12 (5th Cir.2016); H-D Mich., LLC v. Hellenic Duty Free

Shops S.A. 694 F.3d. 827, 842 (7th Cir. 2012).

Respectfully submitted,

Thomas P. Johnson, III
Pro Se Plaintiff
3904 Montrose Dr.
Chevy Chase, Md.  20815
Ph. (301) 367-1606
Email: tpjohnson55@gmail.com